1    UNITED STATES DISTRICT COURT
2        DISTRICT OF PUERTO RICO
3
4

UNITED STATES OF AMERICA,

    v.                                          Criminal No. 12-CR-00735-1 (JAF)

ADEMIR CASTRO-VAZQUEZ,

    Defendant.

5
6                    **SENTENCING ORDER**
7                          **I.**
8                    **Introduction**

9        On December 4, 2012, defendant Ademir Castro-Vázquez (Castro) was convicted

10   in our court, by plea of guilty, of being a prohibited person in possession of a firearm in

11   violation of 18 U.S.C. § 922(g)(1), due to his possession of a fully-loaded .357 magnum

12   revolver outside of a gas station in Trujillo Alto, Puerto Rico, on September 26, 2012.

13   On March 22, 2013, we sentenced Castro to seventy-eight months in prison, followed by

14   three years of supervised release.  In determining that sentence, we relied, without any

15   objection, on the Pre-Sentence Investigation Report (PSR), which had found that Castro

16   had two prior felony convictions for crimes of violence or of controlled substances.  The

17   finding warranted application of an enhancement under Section 2K2.1(a)(2) of the United

18   States Sentencing Guidelines, yielding a guideline range of from sixty-three to seventy-

19   eight months in prison.  Applying the sentencing factors set forth in 18 U.S.C. § 3553(a),

20   we sentenced Castro to the top end of that enhanced range.

1    On appeal, Castro challenged his conviction and sentence. The First Circuit Court

2    of Appeals affirmed the conviction, but vacated the sentence, remanding the case to us,

3    so that we may reconsider the enhancement in light of *Descamps* v. *United States*, 133

4    S.Ct. 2276 (2013), a decision handed down approximately three months after sentencing.

5    *United States* v. *Castro-Vázquez*, 802 F.3d 28 (1st Cir. 2015). The Court held that if "on

6    remand, the district court concludes that the guidelines calculation was erroneous and that

7    [the] enhancement was not warranted, resentencing will be required." *Id*. at 38 (citing

8    *United States* v. *Tavares*, 705 F.3d 4, 25 (1st Cir. 2013)). The Court did not specify the

9    other circumstances under which resentencing would be permitted.[1]

10                                                **II.**

11                    **The Sentencing Enhancement and Castro's Criminal History**

12    Under Section 2K2.1(a)(2) of the guidelines, the base-offense level of a defendant

13    convicted of 18 U.S.C. § 922(g)(1) increases to twenty-four if he "committed any part of

14    the instant offense subsequent to sustaining at least two felony convictions of either a

15    crime of violence or a controlled substance offense." USSG § 2K2.1(a)(2) (2012).[2] "The

16    guidelines define the term 'crime of violence' in Section 2K2.1(a)(2) as: '[A]ny offense

17    under federal or state law, punishable by imprisonment for a term exceeding one year,

---

[1] "The rule of this circuit is that 'upon a resentencing occasioned by a remand, unless the court of appeals [has expressly directed otherwise], the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision – whether by the reasoning or the result.'" *United States* v. *Dávila-Félix*, 763 F.3d 105, 110 (1st Cir. 2014) (*quoting United States* v. *Ticchiarelli*, 171 F.3d 24, 32 (1st Cir. 1999) (alteration in original)).

[2] "As a general rule, a sentencing court should use the version of the guidelines in effect at the time of the disposition hearing." *United States* v. *Mehanna*, 735 F.3d 32, 67 (1st Cir. 2013) (*citing United States v. Harotunian*, 920 F.2d 1040, 1041-42 (1st Cir. 1990)). Here, the sentencing occurred on March 22, 2013. At the time, the 2012 edition of the guidelines was in effect. Unless otherwise indicated, all future direct quotations of the guidelines will be from that edition of them. If we quote a source that uses another edition of the guidelines, we will indicate any differences between the editions.

1   that — (1) has as an element the use, attempted use, or threatened use of physical force

2   against the person of another, or (2) is burglary of a dwelling, . . . or otherwise involves

3   conduct that presents a serious potential risk of physical injury to another.'"  *Castro-*

4   *Vázquez*, 802 F.3d at 34 (*quoting* USSG § 4B1.2(a)).  And, the guidelines define the term

5   "controlled substance offense" as "an offense under federal or state law, punishable by

6   imprisonment for a term exceeding one year, that prohibits," among other things, "the

7   possession of a controlled substance . . . with intent to . . . distribute, or dispense."

8   U.S.S.G. § 4B1.2(b).  Both terms "include the offenses of aiding and abetting, conspiring,

9   and attempting to commit such offenses."  USSG § 4B1.2, Comment. n.1.

10          In order to determine whether a prior conviction counts as a crime of violence or a

11   controlled substance offense, "we apply the framework outlined by the Supreme Court in

12   *Descamps*."  *Castro-Vázquez*, 802 F.3d at 35.  Under that framework, "[w]e look to the

13   elements of the prior convictions as defined by the relevant statute — not to the particular

14   facts underlying the convictions — and we compare those to the elements of the [generic]

15   crimes described in the guideline's definition."  *Id*. (*citing Descamps*, 133 S. Ct. at 2283).

16   If "the statute is 'divisible' — that is, it comprises multiple, alternative versions of a

17   crime not all of which qualify as a predicate offense — then . . . a limited set of 'Shepard'

18   documents, such as the charging documents, . . . may be consulted to determine which of

19   a statute's alternative elements formed the basis of the prior conviction."  *Id*. (*quoting*

20   *Descamps*, 133 S. Ct. at 2283-84); *see also Shepard* v. *United States*, 544 U.S. 13, 17,

21   25-26 (2005) (on use of 'Shepard' documents).  "If the elements . . . sweep more broadly

22   than the generic crime, then the conviction cannot count as a predicate offense, '*even if*

1    the defendant actually committed the offense in its generic form.'"  *Castro-Vázquez*, 802

2    F.3d at 35 (emphasis in original) (*quoting Descamps*, 133 S. Ct. at 2283).

3         In *Descamps*, the Supreme Court reserved the issue of "whether, in determining a

4    crime's elements, a sentencing court should take account not only of the relevant statute's

5    text, but of judicial rulings interpreting it." 133 S. Ct. at 2291.  In this circuit, however,

6    the law is clear that state-court rulings must be consulted to determine the boundaries of

7    state crimes.  For example, in *United States* v. *Whindleton*, 797 F.3d 105 (1st Cir. 2015),

8    the First Circuit consulted New York case law to determine whether a New York drug

9    crime constituted a serious drug offense under the ACCA, concluding that it did based on

10   a narrowing construction of the crime by the New York Court of Appeals.  *Id.* at 110-11

11   (*citing People* v. *Mike*, 92 N.Y.2d 996, 998 (NY 2002)).  Similarly, in *United States* v.

12   *Serrano-Mercado*, 784 F.3d 838 (1st Cir. 2015), the Court turned to Puerto Rico case law

13   to decide whether a Puerto Rico domestic-abuse offense constituted a crime of violence

14   under the guidelines, finding that it did based on "the text of [the statute] and the Puerto

15   Rico Supreme Court's interpretation of it." *Id.* at 845.  Accordingly, a court must consult

16   Puerto Rico case law to determine the definition and scope of Puerto Rico crimes.

17         According to certified records from the Puerto Rico Court of First Instance, which

18   in turn informed the PSR, Castro, as an adult, had been convicted in that Court of eight

19   felony offenses on three different dates before his commission of the felony offense here:

20         (1) On January 22, 2008, he was convicted, by guilty plea in San Juan Superior

21             Court, of two counts of Attempted Robbery (33 L.P.R.A. §§ 4663, 4826) and

22             sentenced to concurrent terms of two years in prison, stemming from his

1       July 12, 2007 robbery of a business in which he stole $200 by telling two

2       female employees, "This is a robbery, give me the money in the cash register!"

3   (2) On October 23, 2008, he was convicted, by guilty plea in Bayamón Superior

4       Court, of Attempted Aggravated Burglary (33 L.P.R.A. §§ 4663, 4832) and

5       sentenced to one year and nine months in prison, stemming from his

6       August 21, 2007, burglary of a residence in which he entered the home, by

7       breaking open a glass door and window, and stole clothes, electronics, video

8       games, and money from the home owner.

9   (3) On October 23, 2008, he was also convicted, by guilty plea in Bayamón

10      Superior Court, of Aggravated Larceny (33 L.P.R.A. § 4821) and Aggravated

11      Damages (33 L.P.R.A. § 4826[b]) and sentenced to concurrent terms of two

12      years and six months in prison, to be served concurrently with the burglary

13      sentence of the same date, stemming from the above burglary in which he

14      caused more than $1,000 in damage to the broken door and window, and stole

15      more than $1,000 in property from the home owner.

16   (4) On April 19, 2011, he was convicted, by guilty plea in Bayamón Superior

17      Court, of Attempted Introducing Objects into a Penal Facility (33 L.P.R.A.

18      §§ 4663, 4911) and sentenced to six months in prison, stemming from his

19      November 4, 2010, attempt to introduce cocaine and marihuana into a prison.

20   (5) On April 19, 2011, he was also convicted, by guilty plea in Bayamón Superior

21      Court, of two counts of Attempt or Conspiracy to Commit Controlled

22      Substances Felony (24 L.P.R.A. §§ 2401, 2406) and sentenced to concurrent

1    prison terms of nine months, to be served concurrently with the prison-

2    contraband sentence of the same date, stemming from the above attempt to

3    introduce drugs into a prison during which he had attempted or conspired to

4    possess, with intent to distribute, cocaine and marihuana.

5    (ECF No. 57 at 4-5.)[3]  Under Section 4A1.1 of the guidelines, the above convictions

6    result in a total of eight points and a criminal-history category of IV.  *See* USSG § 4A1.1.

7                                          **III.**

8                            **Sentencing Enhancement Analysis**

9         Under *Descamps*, Castro still warrants a sentencing enhancement under Section

10   2K2.1(a)(2) of the guidelines.  His Attempted Aggravated Burglary conviction was of a

11   crime of violence and his Attempt or Conspiracy to Commit a Controlled Substance

12   Felony convictions were of a controlled substance offense.

13       **A. Attempted Robbery Conviction:**

14        On January 22, 2008, Castro was convicted in San Juan Superior Court, under

15   docket numbers KBD2007G0986 and –G0987, of two counts of Attempted Robbery (33

16   L.P.R.A. §§ 4663, 4826) and sentenced to concurrent prison terms of two years.  Under

17   Puerto Rico law, a defendant can commit robbery in one of two ways: By "unlawfully

18   tak[ing] personal property belonging to another in the immediate presence of said person

19   and against his/her will by means of violence or intimidation," or by "unlawfully tak[ing]

_____

[3] The PSR erroneously stated that Castro had been convicted of Robbery, instead of Attempted Robbery, and Aggravated Burglary, instead of Attempted Aggravated Burglary.  At a proceeding on September 17, 2015, we informed counsel that they could contact the Probation Officer to view the certified court records of Castro's Puerto Rico convictions.  (ECF No. 81 at 22.)  By the time the parties submitted their resentencing briefs to us, these errors had been cleared up.  Their briefs reflect Castro's correct crimes of conviction in Puerto Rico courts.  (ECF Nos. 90 at 3; 91 at 6-7.)  The PSR has been amended to reflect the corrections urged by Castro.  (ECF No. 97.)

Civil No. 12-CR-00735-1 (JAF)                                                    -7-

1    personal property and immediately after having committed the act uses violence or

2    intimidation against another to retain the taken item." 33 L.P.R.A. § 4826. To qualify as

3    a crime of violence, the elements of felony robbery must involve "the use, attempted use,

4    or threatened use of physical force against the person of another." *Castro-Vázquez*, 802

5    F.3d at 34 (*quoting* USSG § 4B1.2(a)(1)).

6        At first blush, it appears that the Puerto Rico robbery statute qualifies because of

7    its element of "violence or intimidation" (in Spanish, "violencia" or "intimidación"). In

8    *People v. Lucret Quiñones*, 111 P.R.R. 904 (1981), the Puerto Rico Supreme Court found

9    that "intimidation and violence towards a person are indispensable elements" of robbery

10    under the statute. *Id*. at 933.[4] Construing those elements, the Court held that "violence"

11    means "the use of bodily force," and "intimidation" means "the moral pressure exerted on

12    the person's mind in order to get something from him." *Id*. The Court further held that

13    the use of violence or intimidation to forcibly take or retain a victim's property naturally

14    exposes the victim "to a great risk or danger of losing his life or suffering great bodily

15    injury." *Id*. It thus appears that a robber's use of violence or intimidation necessarily

16    involves the actual or threatened use of physical force "capable of causing physical pain

17    or injury to another person." *See Castro-Vázquez*, 802 F.3d at 37 (*quoting United States*

18    v. *Martinez*, 762 F.3d 127, 133 (1st Cir. 2014) (defining "physical force")). Indeed, that

---

[4] The official translation of this 1981 opinion often translates the word "intimidación" as "fear." But, the official translation of the robbery statue in the 2004 Penal Code translates "intimidación" as "intimidation." For the sake of consistency and clarity, quotations in the main text of *Lucret Quiñones* will substitute the word "intimidation" for "fear." Although the robbery statute construed in *Lucret Quiñones* was the version in the 1974 Penal Code, that version and the 2004 one are closely related, and they both contain the same "violence or intimidation" element. *See* Nevares-Muñiz, *infra*, at 264.

1    may be why the Court in *Lucret Quiñones* concluded that "robbery *as such is a very*

2    *dangerous crime for human life.*"  111 P.R.R. at 933 (emphasis in original).

3          But, only one year later, the Puerto Rico Supreme Court revisited their holding on

4    robbery's "violence or intimidation" element.  In *People* v. *Batista Montañez*, 113 P.R.R.

5    401 (1982), the Court encountered a robbery conviction that could not stand under *Lucret*

6    *Quiñones*.  In this case, the defendant had demanded a quarter from the victim, a sixteen

7    year-old boy, as he was leaving school.  *Id*. at 402.  When the boy refused and started to

8    walk away, he felt the defendant yank off the chain he had been wearing around his neck.

9    Turning around, the boy saw the defendant standing next to him and heard someone order

10   him to leave.  The boy obeyed.  The defendant was arrested and ultimately convicted of

11   robbery, receiving a sentence of eight years in prison.  *Id*.  As serious as that crime was, it

12   was difficult to see how those facts could support a finding, under *Lucret Quiñones*, that

13   the defendant had exposed the boy to a danger of suffering great bodily injury.

14         Reviewing that conviction, the Puerto Rico Supreme Court found that the robbery

15   statute needed to be reinterpreted "in the light of the specific realities of the society in

16   which it operates."  *Id*. at 408.  The Court held that "the needs of the present Puerto Rican

17   society" required the protection of "the dignity of the person when he is deprived of his

18   personal property by means of any kind of violence or intimidation."  *Id*. at 408-09.  The

19   Court noted an outbreak of theft "by sudden snatching" in Puerto Rico and declared that

20   such cases should be cognizable as felony robbery, and not simply as larceny.  *Id*. at 410.

21   As a result, the Court ruled that "[a]ny use of force or aggression which has or may have

22   the effect of forcing a person to give up his property . . . is sufficient to constitute the

1   'force' required by [the robbery statute]." *Id*. (citation omitted).  That ruling broadened

2   the violence-or-intimidation element of the robbery statute beyond the generic physical-

3   force element used in the guidelines.  And, that ruling remains good law, both at the time

4   of Castro's 2008 robbery conviction, as well as today.  *See People* v. *Díaz*, 2015 PR App.

5   LEXIS 818 (T.C.A., Bayamón Jud. Dist., Mar. 27, 2015); *People* v. *Delgado Carrión*,

6   2007 PR App. LEXIS 3174 (T.C.A., Arecibo Jud. Dist., Oct. 5, 2007).

7        This evolution in Puerto Rico case law has had the unfortunate consequence of

8   turning every local robbery conviction into a non-violent one for purposes of the federal

9   guidelines.  Even when a defendant commits a robbery of unquestionable violence – by

10  taking money from someone after placing the barrel of a loaded gun against their head

11  and demanding the money or their life – the guidelines, under *Descamps*, require us to

12  ignore that reality and deem the conviction non-violent because the local courts have

13  interpreted the robbery statute to cover purse snatchings and other less-forceful acts.  As

14  a result, when faced with a local robbery conviction, the guidelines will routinely

15  recommend a sentencing range that does not adequately weigh, consider, or address the

16  defendant's violent criminal history.

17        The irony here is twofold.  First, a statutory construction initially intended to deter

18  violent crime, by increasing the legal punishment for anyone who forcibly steals property

19  in Puerto Rico, results in systemic leniency to violent felons by lowering the guidelines

20  sentencing recommendation for everyone previously convicted in Puerto Rico of robbery.

21  Perhaps in a society filled with purse snatchers but few violent robbers, this irony could

22  be appreciated.  But, in Puerto Rico, where our capital city has a robbery rate more than

1   75% higher than the average mainland metropolis and where robberies "almost always

2   involve firearms," the irony is nearly tragic. *See United States* v. *Gonzalez-Roman*, 115

3   F. Supp. 3d 271, 274 (D.P.R. 2015); 2013 FBI Crime in the United States Tables 2 and 6

4   (reporting robbery rate of 216.8 in San Juan metropolitan area, and robbery rate of 123.4

5   in metropolitan areas nationwide).  Second, the Puerto Rico Legislature could resolve this

6   problem by amending the robbery statute to provide for two distinct crimes of forcible

7   theft: In one, the force is capable of causing physical pain or injury; in the other, it is not.

8   Under *Descamps*, sentencing courts could then examine records from convicting Puerto

9   Rico courts to determine whether a defendant has been convicted of the "violent" version

10   of robbery.  *See Descamps*, 133 S. Ct. at 2283-84.  But, without this quick fix in place,

11   *Descamps* mandates that the exact same records from the exact same conviction cannot

12   be used to determine whether the conviction was of a violent crime.  *Id.* at 2285, 2288-89.

13   As a result, especially in cases where no one contests that the defendant's robbery was

14   violent, the guidelines will produce an unduly lenient sentencing recommendation.

15        In sum, the court finds that, under *Descamps*, Castro was not convicted of a crime

16   of violence.

17   **B.  <u>Attempted Aggravated Burglary Conviction</u>:**

18        On October 23, 2008, Castro was convicted in Bayamón Superior Court, under

19   docket number DBD2008G0982, of Attempted Aggravated Burglary (33 L.P.R.A.

20   §§ 4663, 4832) and sentenced to seventeen months in prison.  Under Puerto Rico law, a

21   person commits burglary when he "enters a dwelling, building or other construction or

22   structure . . . with the purpose of committing any crime involving an unlawful taking or a

1  felony." 33 L.P.R.A. § 4831.  A person commits Aggravated Burglary, "[i]f the burglary

2  . . . is committed in an inhabited building" (in Spanish, "edificio ocupado").  33 L.P.R.A

3  § 4832.  And, the Penal Code defines "edificio ocupado" as "any house, structure, vehicle

4  or other location adapted to provide night accommodation [to] human beings, for doing

5  business in same, for the care of children or persons, for teaching at any level, or for

6  public purposes," including "its annexes, dependencies and the lot on which same is

7  located," "provided that the same is in use, even if there are no persons present at the

8  time of the event." 33 L.P.R.A. § 4642(j).  To qualify as a crime of violence, Aggravated

9  Burglary must be equivalent to, or narrower than, the generic crime of "burglary of a

10  dwelling," which involves (1) an unlawful or unprivileged entry, (2) into an enclosed

11  space used or designed for human habitation, (3) with intent to commit a crime inside.

12  *See United States* v. *Ramírez*, 708 F.3d 295, 301, 304 (1st Cir. 2013).

13      This court will consider those elements in reverse order, starting with intent and

14  ending with entry.  The intent element for generic burglary requires that the defendant

15  enter the dwelling "with intent to commit a crime." *Id*. at 301 (*quoting Taylor* v. *United

16  States*, 495 U.S. 575, 598 (1990)).  The Puerto Rico statute is narrower, however, because

17  it requires that the entry must occur "with the purpose of committing any crime involving

18  an unlawful taking or a felony." 33 L.P.R.A. § 4831.  Accordingly, the intent element of

19  Burglary under Puerto Rico law fits within the intent element of generic burglary.

20      Next, to qualify under the guidelines, the conviction must be of the burglary of "a

21  dwelling," defined as "an enclosed space for use or intended use for human habitation."

22  *Ramírez*, 708 F.3d at 303.  At first blush, 33 L.P.R.A § 4832 appears to be an indivisible

1    statute criminalizing burglary of an inhabited building.  And, the definition of "inhabited

2    building" under Puerto Rico law is broader than that of "dwelling" under the guidelines.

3    After all, the former not only includes the latter, but it also includes care centers, schools,

4    and the lots on which they sit.  33 L.P.R.A. § 4642(j).  Accordingly, Aggravated Burglary

5    under Puerto Rico law is not "categorically the equivalent to the enumerated burglary of a

6    dwelling offense under the Guidelines."  *Ramírez*, 708 F.3d at 304.  That does not end

7    our analysis, however, because 33 L.P.R.A. § 4832 is actually a divisible statute.  *Cf.*

8    *Castro-Vázquez*, 802 F.3d at 36 n.5 (finding the general Burglary statute, 33 L.P.R.A.

9    § 4831, divisible due to its recitation of "alternative places where burglary can occur").

10          When drafting the Penal Code, the Legislature eliminated textual redundancies by

11   using a definitional statute to establish the meaning of common terms.  As is relevant

12   here, instead of defining "edificio ocupado" anew each time the term is used, *see, e.g.,* 33

13   L.P.R.A. §§ 4762(c) (Kidnapping of Minors), 4832 (Aggravated Burglary), 4865(c)

14   (Aggravated Arson), the Legislature defined it only once in 33 L.P.R.A. § 4642(j).  And,

15   whenever the term "edificio ocupado" is encountered in the Penal Code, such as in the

16   Aggravated Burglary statute, the term serves as a placeholder for the many distinct types

17   of premises set forth in 33 L.P.R.A. § 4642(j).  In other words, as "a general definitional

18   statute," the "words" in 33 L.P.R.A. § 4642(j)'s definition of 'inhabited building' apply

19   "automatically" to that term's appearance in the Aggravated Burglary statute.  *See United*

20   *States* v. *Leppo*, 177 F.3d 93, 95 (1st Cir. 1999) (*citing United States* v. *Sabatino*, 943

21   F.2d 94, 99-100 (1st Cir. 1991)).  Once read together with this definition of 'inhabited

22   building,' it becomes plain that 33 L.P.R.A. § 4832 proscribes many distinct Aggravated

1    Burglary crimes and that the statute is "divisible" under *Descamps*.  *See generally United*

2    *States* v. *Trent*, 767 F.3d 1046, 1055-57 (10th Cir. 2014) (explaining why it is proper to

3    determine divisibility of statute in light of definition of its terms in other statutes); *United*

4    *States* v. *Mathis*, 786 F.3d 1068, 1071-75 (8th Cir. 2015) (same); *United States* v. *Ozier*,

5    796 F.3d 597 (6th Cir. 2015) (same).

6          Two controlling precedents show that a court must incorporate definitional statutes

7    into a substantive one when determining whether the latter is divisible.  In *United States*

8    v. *Castleman*, 134 S. Ct. 1405 (2014), the Supreme Court had to decide whether a statute

9    criminalizing "assault" against a family or household member was divisible.  *Id.* at 1413

10   (quoting Tenn. Code Ann. § 39-13-111[b]).  Although the "assault" element appeared

11   indivisible on its face, the Court and the parties all agreed that the statute was divisible

12   because it "incorporated by reference" another statute that "defined three types of

13   assault."  *Id.* at 1413-14 (*citing* Tenn. Code Ann. § 39-13-101).  Similarly, in *Ramírez*,

14   the First Circuit had to determine whether a statute criminalizing burglary of "a dwelling"

15   was divisible.  708 F.3d at 303 (*quoting* Fla. Stat. § 810.02[1]).  Although the "dwelling"

16   element appeared indivisible on its face, the First Circuit found that it was not because

17   another statute defined "dwelling" as a type of "building or conveyance . . . , together

18   with the curtilage thereof."  *Id.* (*quoting* Fla. Stat. § 810.011[2]).  Specifically, the Court

19   found that the statutory offense of "burglary of a dwelling" was divisible because it

20   "include[d] both burglary of a building or conveyance and burglary of [their] curtilage."

1   *Id.*[5]  In *Castleman* and *Ramírez*, the courts found that the divisible definition in a separate

2   statute of a facially indivisible element in the primary statute rendered the latter divisible

3   as well.  The same mechanism is at work here.  Because the statutory definition of an

4   "inhabited building" or "edificio ocupado" is divisible, the Aggravated Burglary statute is

5   also divisible.  In particular, the Aggravated Burglary statute can be divided into distinct

6   crimes based on its recitation of the "alternative places where burglary can occur."  *See*

7   *Castro-Vázquez*, 802 F.2d at 36 n.5.

8          Since we are faced with a divisible statute of conviction, the court may examine

9   records from the judgment below, "such as the charging documents, . . . to determine

10  which of [the] statute's alternative elements formed the basis of [Castro's] prior

11  conviction." *Id*. at 35 (citing *Descamps*, 133 S. Ct. at 2283-84).  The sentencing order or

12  Sentencia does not answer the question because it simply states that Castro was convicted

13  of Attempted Aggravated Burglary. Sentencia, *People* v. *Castro-Vázquez*, Crim.

14  No. DBD2008G0982 (Bayamón Super. Ct. Oct. 21, 2008).  The accusatory instrument or

15  Acusación, on the other hand, alleges that Castro "unlawfully entered" the "residence" of

16  a named complainant, by forcing open "a window and glass door," with intent to commit

17  larceny.  Acusación, *People* v. *Castro-Vázquez*, Crim. No. DBD2008G0982 (Bayamón

18  Super. Ct. Oct. 21, 2008) (translation by this court).  The Acusación makes plain that

19  Castro must have been convicted of the subpart of the Aggravated Burglary statute

---

[5]        The First Circuit has routinely read statutes together with separate but related definitional statutes when determining the divisibility of the former under *Descamps*.  For example, in *Kaufmann* v. *Holder*, 759 F.3d 6 (1st Cir. 2014), the Court found divisible a statute that criminalized "the knowing possession of child pornography," based on the definition, in a separate statute, of "child pornography," which in turn invoked the divisible definition of "prohibited sexual act," which in turn invoked the divisible definition of "erotic fondling."  *Id*. at 9 (*citing* Conn. Gen. Stat. § 53a-193(3), (5), (13)).

1   criminalizing the burglary of "any house . . . adapted to provide night accommodation

2   [to] human beings."  *See* 33 L.P.R.A. §§ 4642(j), 4832;[6] *see also Mathis*, 786 F.3d at

3   1074-75 (finding that divisible definition of burglary of "occupied structure," comprising

4   "any building, structure, appurtenances to buildings and structures, land, water or air

5   vehicle, or similar place adapted for overnight accommodation of persons," included

6   distinct crime of burglary of a building) (*quoting* Iowa Code § 702.12); *United States* v.

7   *Hockenberry*, 730 F.3d 645, 669 (6th Cir. 2013) (similar).

8          Now that we have identified the variant of Attempted Aggravated Burglary of

9   which Castro was convicted, we must decide whether a burglary of a "house . . . adapted

10  to provide night accommodation [to] human beings" under Puerto Rico law constitutes a

11  burglary of a "dwelling" under the guidelines.  We find that it does.  The First Circuit has

12  defined "dwelling" as "an enclosed space for use or intended use for human habitation."

13  *Ramírez*, 708 F.3d at 303.  The Puerto Rico Supreme Court has similarly defined "casa,"

14  as used in the burglary statute, as "a place where people live or may live."  *People* v.

15  *Cosme Vargas*, 96 P.R.R. 815, 820 (1969); *see also People* v. *Casillas Díaz*, 190 D.P.R.

16  398, 418-19 (2014) (applying burglary-statute definitions in *Cosme Vargas* to burglary

17  statute in 2004 Penal Code); *Municipio Autónomo de San Sebastián* v. *QMC Telecom,*

18  *LLC*, 190 D.P.R. 652, 671 (2014) (defining "casa" as "building intended for habitation")

19  (*quoting Casa*, Diccionario del la Real Academia Española) (translation by this court).

20  The Court also indicated that, although the places covered by the burglary statute do not

---

[6]     After all, the Acusación does not allege that Castro burglarized a care center, a school, a public building, something adapted to overnight accommodation other than a house, or any of their curtilages, which are the only other options under the definition of "inhabited building."  *See* 33 L.P.R.A. § 4642(j).

1   need to be enclosed by walls, they must still be enclosed in some manner.  *See Cosme*

2   *Vargas*, 96 P.R.R. at 820-21.  Meanwhile, the First Circuit has indicated that its definition

3   of "dwelling" as enclosed space should be interpreted broadly to include, "at a minimum,

4   tents and vessels used for human habitation." *Ramírez*, 708 F.3d at 303 (*quoting United*

5   *States* v. *Murillo-Lopez*, 444 F.3d. 337, 345 (5th Cir. 2006)).  Accordingly, the house

6   element of the Aggravated Burglary statute falls within the dwelling element of generic

7   burglary as used in the guidelines.

8        The last issue to consider is the entry element.  Under the guidelines, burglary of a

9   dwelling requires an "unlawful or unprivileged entry." *Descamps*, 133 S. Ct. at 2283

10  (*quoting Taylor*, 495 U.S. at 599).  But, the 2004 Puerto Rico Penal Code, under which

11  Castro was convicted, seems to provide only that burglary occurs when a person "enters"

12  (in Spanish, "penetre") the premises.  33 L.P.R.A. § 4831.  Based on that language alone,

13  it is easy to think that the Puerto Rico burglary statute must be overbroad.  *See Castro-*

14  *Vázquez*, 802 F.3d at 35 (Castro alleging that the statute lacks unlawful-entry element).

15  Moreover, the 2004 statute descends in part from the burglary statute in the 1902 Penal

16  Code, which was itself a descendant of the burglary statute in California Penal Code,

17  § 459.  Dora Nevares-Muñíz, *Nuevo Código Penal de Puerto Rico* 272-73 (3rd ed. 2008);

18  *see also People* v. *Reyes Bonilla*, 100 D.P.R. 265, 267 (1971) (*citing People* v. *Medina*

19  *Walker*, 90 D.P.R. 650, 652 (1964)).  And, that California burglary statute happens to

20  have been the one that the Supreme Court found overbroad in *Descamps* because it lacks

21  an unlawful-entry element and, so, "covers, for example, a shoplifter who enters a store,

22  like any customer, during normal business hours." *Descamps*, 133 S. Ct. at 2282, 2287-

1    88 (*citing People* v. *Barry*, 94 Cal. 481, 483-84 (1892)).  It does not help that the leading

2    commentary on the 2004 Puerto Rico Penal Code misconstrues this aspect of the burglary

3    statute.  As to whether the entry must be unlawful, the commentary cites only a Puerto

4    Rico case from 1927 – which interpreted the 1902 statute in light of the 1892 California

5    case of *Barry* – for the idea that the crime of burglary includes the act of entering an open

6    public establishment with the intent to shoplift from it.  *See* Nevares-Muñiz, *supra*, at 275

7    (*citing People* v. *Oliveros*, 36 D.P.R. 510 (1927)).  But, the law has developed since then.

8          The history and case law surrounding the modern Puerto Rico burglary statute

9    show that it possesses an unprivileged-entry element that matches the entry element of

10   generic burglary under the guidelines.  Before going any further, though, we must define

11   the entry element of generic burglary.  The Supreme Court has consistently defined it as

12   involving "an unlawful or unprivileged entry."  *See*, *e.g.*, *Descamps*, 133 S. Ct. at 2283;

13   *Johnson*, 559 U.S. at 148 n.1; *Taylor*, 495 U.S. at 598.  When defining it in *Taylor*, the

14   Court sought to capture "the generic sense in which the [element] is now used in the

15   criminal codes of most States," *quoting* Wayne R. LaFave's criminal-law treatise for the

16   proposition that most States have "expanded" the definition of burglary "to include entry

17   without a 'breaking'" and to "generally require [only] that the entry be unprivileged."

18   *Taylor*, 495 U.S. at 593, 598 (*quoting* W. LaFave & A. Scott, *Substantive Criminal Law*

19   § 8.13[a], p. 464 [1986]).  When revisiting the entry element twenty-three years later in

20   *Descamps*, the Court cited the latest edition of LaFave's influential treatise for the idea

21   that "the generic crime [of burglary] requires breaking and entering or similar unlawful

22   activity."  133 S. Ct. at 2292 (*citing* 3 W. LaFave, Substantive Criminal Law § 21.1[a]

1    [2d ed. 2003] ["LaFave"]).  It thus appears that LaFave's treatise is persuasive authority

2    on this element of generic burglary.  And, according to LaFave, "[i]n the current criminal

3    codes of the fifty states, only seldom is there a requirement of a breaking."  LaFave,

4    § 21.1(a).  Instead, the codes "generally require that the entry be unprivileged," following

5    the "approach" of Model Penal Code § 221.2 by "excluding" from the definition of

6    burglary only "those entries of premises when they are open to the public or by a person

7    licensed or privileged to enter."  *Id*.  In other words, for the generic crime of burglary as

8    understood today in the criminal codes of most States, an entry need only be "unlawful,"

9    and will be deemed unlawful if it was "unauthorized" or constituted "trespass."  *Id*.

10        The burglary statute in the 2004 Puerto Rico Penal Code possesses this element of

11   unprivileged entry.  Unlike the 1902 statute that was construed in *Oliveros*, the Puerto

12   Rico Legislature incorporated into the 2004 statute the language and provisions of Model

13   Penal Code § 221.1, which provides that "[a] person is guilty of burglary if he enters a

14   building or occupied structure . . . with purpose to commit a crime therein, *unless the*

15   *premises are at the time open to the public or the actor is licensed or privileged to enter*."

16   *In re J.O.*, 2012 PR App. LEXIS 1464, *5 (T.C.A., San Juan Jud. Dist., Jan. 31, 2012)

17   (emphasis in original) (*citing* P.R. S. Rep. on S.B. 2302, 14th Legis. Assemb., 5th

18   Ordinary Sess., June 22, 2003, p. 55; *and quoting* Model Penal Code, § 221.1); *see also*

19   *People* v. *Ruiz López*, 2013 PR App. LEXIS 1528, *26 (T.C.A., Mayaguez Jud. Dist.,

20   Apr. 17, 2013) (same).  Although the 2004 burglary statute does not explicitly reproduce

21   the Model Penal Code's language about license or privilege, Puerto Rico courts recognize

1   that the limitation still applies and, thus, that a burglary conviction under the 2004 Penal

2   Code requires an unprivileged entry.  *See In re J.O.* at \*12-13; *Ruiz López* at \*35.

3         Since the 1960s, the Puerto Rico Supreme Court has construed the burglary statute

4   as requiring an unprivileged entry.  For example, in *People* v. *Torres Pérez*, 81 P.R.R.

5   659 (1960), the Court held that, to convict a defendant of burglary, the government must

6   prove that he "entered illegally" (in Spanish, "penetró ilegalmente") the premises.  *Id*. at

7   661.  There, the Court found the trial evidence sufficient to prove that element because

8   the victim had returned home to find her kitchen door open and the uninvited defendant

9   inside.  *Id*. at 662-64.  Later, in *People* v. *Laboy Díaz*, 90 P.R.R. 182 (1964), the Court

10  found that the government had failed to prove "illegal entry" (in Spanish, "penetración

11  ilegal") where the defendant had been employed to work at the burglarized bar, and so

12  was authorized to enter it at the time of the alleged theft.  *Id*. at 187-89.  And, in *People*

13  v. *Rodriguez Hernández*, 91 P.R.R. 176 (1964), the Court affirmed a burglary conviction,

14  finding the illegal-entry element (in Spanish, "la penetración illegal") sufficiently proven

15  by the testimony of the victim that whoever had stolen from her had entered her business

16  by removing its padlock "without permission or consent" (in Spanish, "sin el permiso o

17  consentimiento").  *Id*. at 193-94, 194 n.1.

18        At the time of these cases, the Puerto Rico burglary statute simply provided that,

19  insofar as the entry element was concerned, the defendant "enters" (in Spanish, "entrare")

20  the burglarized premises.  *See Laboy Díaz*, 90 P.R.R. at 184 (*quoting* former 33 L.P.R.A.

21  § 1591); *People* v. *Pagan Medina*, 99 P.R.R. 731, 733 (1971) (same).  Thus, it is clear

22  that, in construing that statute, the Puerto Rico Supreme Court purposefully introduced an

1    unprivileged-entry element into the old 1902 burglary statute, which then carried over to

2    the 2004 statute.  *See People* v. *Casillas Díaz*, 190 D.P.R. 398, 418 & n.67; *cf.* Nevares-

3    Muñiz, *supra*, at 272-73.  To make this unprivileged-entry element evident, the drafters

4    of the 2004 statute replaced the word "entrare" with "penetre" (in English, "penetrates")

5    to describe the entry requirement.  *See* 33 L.P.R.A. § 4831.  As the Government correctly

6    notes, "the word 'penetre' is incorrectly translated as 'enters,' when in fact the Spanish-

7    language word has a connotation of unwanted, or violent, entry."  (ECF No. 91 at 28.)

8         The recent Puerto Rico Court of Appeals case of *In re J.O.*, 2012 PR App. LEXIS

9    1464 (T.C.A., San Juan Jud. Dist., Jan. 31, 2012), clearly sets forth the unlawful-entry

10   element in the 2004 burglary statute.  There, the Court had to rule on whether a juvenile

11   could be prosecuted for Aggravated Burglary under 33 L.P.R.A. § 4832 upon a charging

12   document that did not allege that he had illegally entered the open Kmart store that he

13   then shoplifted from in 2011.  *Id*. at *1-2.  The petitioner argued that he could not be tried

14   for burglary because he did not commit an illegal entry (in Spanish, "penetración ilegal")

15   into the store; at the time of his shoplift, the store was open to the public.  *Id*. at *4.  The

16   Court unanimously agreed.  The Court recounted the history of the Puerto Rico Supreme

17   Court's addition of an illegal-entry requirement into the 1902 burglary statute via judicial

18   construction.  *Id*. at *7, *11.  The Court also noted that the Legislature had based the

19   2004 Aggravated Burglary statute in part on Model Penal Code § 221.1, thereby adopting

20   that provision's unprivileged-entry element.  *Id*. at *5-6, *11.

21        The Court of Appeals cited two additional authorities in support of its holding that

22   a shoplifter who steals from a business open to the public does not commit burglary

Civil No. 12-CR-00735-1 (JAF)                                                        -21-

1    because he did not enter the premises illegally.  First, the Court noted that a bill pending

2    in the Puerto Rico Legislature to have the new 2012 Penal Code explicitly mention illegal

3    entry as an element of Aggravated Burglary was opposed in Committee because such an

4    amendment would imply that the Legislature had abolished illegal entry as an element of

5    simple Burglary.  *Id.* at *7-8 (*citing* J. Comm. of Leg. for Rev. of Penal Code and for

6    Reform of Penal Laws, Third Rep. on S. B. 2021, Nov. 6, 2011, p. 137).[7]   The

7    Committee specifically observed that Puerto Rico's then-existing law of burglary

8    presupposed that the entry required by statute was an illegal entry.  *Id.* at *8 (*citing* J.

9    Comm. of Leg. for Rev. of Penal Code and for Reform of Penal Laws, Third Rep. on S.

10   B. 2021, Nov. 6, 2011, p. 139).  Second, the Court pointed to the 1999 enactment of a

11   new section of the Penal Code, 33 L.P.R.A. § 4823, providing for the misdemeanor

12   offense of shoplifting in order to create, the law's preamble declared, a more appropriate

13   punishment for this specific form of larceny.  *Id.* at *8-9 (quoting P.R. Law 249 of Aug.

14   15, 1999).  If, as the preamble stated, shoplifting was being prosecuted as misdemeanor

15   larceny, 33 L.P.R.A. § 4820, then it was not being prosecuted as felony burglary –

16   because, of course, the lack of unlawful entry precludes the shoplift from constituting

17   burglary.

18          In the end, the Court of Appeals concluded that the legal definition of burglary in

19   Puerto Rico mirrors the definition in the Model Penal Code and in the majority of States

20   insofar as they require an unprivileged entry (in Spanish, "una entrada no autorizada").

---

[7]        In the end, the Puerto Rico Legislature, as part of the 2012 Penal Code, enacted an Aggravated Burglary statute that still proscribes burglary of an inhabited building, but that now also proscribes any burglary where the illegal entry was accomplished by means of force. P. R. Penal Code of 2012, Art. 195.

1    *Id.* at \*11-12.  Accordingly, the Court dismissed the accusatory instrument on the ground

2    that a shoplifter cannot be charged with Aggravated Burglary if he was authorized to

3    enter the store because, at the time, the store was open to the general public.  *Id.* at \*13.

4    Similarly, in *People* v. *Ruiz López*, 2013 PR App. LEXIS 1528 (T.C.A., Mayaguez Jud.

5    Dist., Apr. 17, 2013), a different Court of Appeals reversed a conviction under the 2004

6    Aggravated Burglary statute in part because the owner of the property that the defendant

7    had been convicted of burglarizing had given the defendant "free access to the property"

8    (in Spanish, "libre acceso a la propiedad"), thereby rendering the defendant's entry onto

9    the property legal on the occasion of his theft.  *Id.* at \*34-36.  Numerous other Courts of

10   Appeals have affirmed that the entry element of the 2004 burglary statute contains an

11   unlawfulness component.  *See*, *e.g.*, *People* v. *Rodríguez Vargas*, 2014 PR App. LEXIS

12   2927, \*9 n.11 (T.C.A., Mayaguez, Aguadilla, and Utuado Jud. Dist., Aug. 29, 2014);

13   *People* v. *Serrano Díaz*, 2012 P.R. App. LEXIS 4748, \*48 (T.C.A., San Juan Jud. Dist.,

14   Dec. 10, 2012); *In re E.S.M.R.*, 2012 PR App. LEXIS 120, \*32 (T.C.A., Carolina and

15   Fajardo Jud. Dist., Jan. 11, 2012); *cf. Casillas Díaz*, 190 D.P.R. at 426, 429 (reversing

16   Aggravated Burglary convictions under 2004 Penal Code because the trial evidence did

17   not prove the defendant's specific intent to commit a crime at the time of his entry, even

18   though the entry had been unlawful).

19          Accordingly, we find that the entry element of the 2004 Aggravated Burglary

20   statute under which Castro was convicted required an unprivileged entry.  As a result, a

21   mere shoplifter cannot be prosecuted for felony burglary in Puerto Rico.  Because the

22   entry element of 33 L.P.R.A. § 4832 possesses the requisite unlawfulness component, the

1  court finds this element equivalent to the entry element of generic burglary as used in the

2  guidelines.

3       Finally, as Castro points out, we must determine whether Puerto Rico's definition

4  of "attempt" falls within the generic definition of "attempt." (ECF No. 90 at 14.) It does.

5  The 2004 Puerto Rico Penal Code defined attempt as follows: "Attempt exists when a

6  person acts or incurs in omissions unequivocally and instantaneously directed toward

7  initiating the commission of a crime that is not consummated due to circumstances

8  beyond the control of the person."  33 L.P.R.A. § 4663.  Meanwhile, Castro argues that

9  the generic concept of attempt requires "(1) the intent to commit the underlying offense,

10  and (2) 'an overt act constituting a substantial step toward the commission of the

11  offense.'"  (ECF No. 90 at 14, quoting *United States* v. *Gonzalez-Monterroso*, 745 F.3d

12  1237, 1243 (9th Cir. 2014).)  Castro does not contest that the Puerto Rico definition of

13  "attempt" includes a *mens rea* component equivalent to the one in the generic conception.

14  After all, if an attempt is "unequivocally and instantaneously directed toward initiating

15  the commission of a crime," and if the crime requires a certain intent, then the attempt

16  itself must also possess that intent.  *See* 33 L.P.R.A. § 4663.  Instead, Castro argues that

17  "Puerto Rico's attempt law . . . cannot satisfy the guideline's definition of crime of

18  violence" because it "does not require the defendant's actions to 'cross the line between

19  preparation and attempt.'"  (ECF No. 90 at 14, *quoting Gonzalez-Monterroso*, 745 F.3d at

20  1243.)  However, that argument is mistaken.

21       Under Puerto Rico law, the concept of "unequivocalness" requires that the *actus*

22  *reus* of the attempt be unambiguous as to the fact that it is an attempt to commit a crime.

1    In this sense, it mirrors the concept of *res ipsa loquitur* because if one must look beyond

2    the act to see that it is the commission of a crime, then the act is not unequivocal and,

3    thus, is not an "attempt."  Nevares-Muñíz, *supra*, at 60 (*citing The King* v. *Barber*, [1924]

4    NZLR 865 CA).  Indeed, if there is any ambiguity to the act, meaning that it may be

5    innocent instead of criminal, then it cannot be punished as an attempt under Puerto Rico

6    law.  *Id.* at 60.  According to Nevares-Muñíz, under this concept of unequivocalness, if

7    the means employed by the defendant in the attempt are not adequate to complete the

8    crime, the act is not unequivocal enough to constitute an "attempt."  *Id*. at 61.

9         Thus, Puerto Rico law requires that the *actus reus* of an attempt goes far beyond a

10   substantial step, which is simply "strongly corroborative of the actor's criminal purpose."

11   *United States* v. *Sanchez*, 667 F.3d 555, 562-63 (5th Cir. 2012) (*quoting* Model Penal

12   Code § 5.01(2)).  If anything, the Puerto Rico conception of the *actus reus* is equivalent

13   to the Ninth Circuit's more muscular conception of substantial step, which only "occurs

14   when a defendant's 'actions unequivocally demonstrat[e] that the crime will take place

15   unless interrupted by independent circumstances.'"  *Gonzalez-Monterroso*, 745 F.3d at

16   1243 (alteration in original) (internal quotations omitted) (*quoting Hernandez Cruz* v.

17   *Holder*, 651 F.3d 1094, 1102 (9th Cir. 2011)).  After all, both conceptions of attempt

18   require that the criminal act is so clear in its direction and intent that, without the

19   intervention of some unforeseen circumstances, the crime would have been completed.

20   Indeed, both conceptions of attempt possess the element of unequivocalness.  Thus, the

21   Puerto Rico definition of attempt fits within the generic definition of attempt.

1    In sum, because the elements of the discrete crime of which Castro was convicted

2    under the 2004 Aggravated Burglary statute fit within the elements of the generic crime

3    of burglary of a dwelling, Castro's 2008 conviction of Attempted Aggravated Burglary

4    was of a crime of violence for purposes of the federal sentencing guidelines.[8]

5    **C. Attempted Introducing Objects into a Penal Facility Conviction:**

6    On April 19, 2011, Castro was convicted in Bayamón Superior Court, under

7    docket number DFJ2010G0038, of Attempted Introducing Objects into a Penal Facility

8    (33 L.P.R.A. §§ 4663, 4911) and sentenced to six months in prison.  Under 33 L.P.R.A.

9    § 4911, "Any person who sells, introduces, or helps to sell or who has in his possession

10   with the intent to introduce or sell narcotics, drugs or any other controlled substance or

11   any type of weapon, alcoholic or intoxicating beverages, explosives, projectiles or other

12   object that could affect the order or security in any penal institution or facility in the

13   correctional system, from within or from outside, to any inmate, knowing he/she is an

14   inmate, shall incur a fourth degree felony."  To "qualify as a 'controlled substance

15   offense' for purposes of the [guidelines], the drug offense must be one that . . . 'prohibits

16   the manufacture, import, export, distribution, or dispensing of a controlled substance . . .

17   or the possession of a controlled substance . . . with intent to manufacture, import, export,

---

[8] Under Puerto Rico law, "[a]ny attempt to commit a felony entails a punishment equal to half of the fixed punishment for the consummated crime."  33 L.P.R.A. § 4664.  Aggravated Burglary is a third-degree felony.  33 L.P.R.A. § 4832.  As such, it "[e]ntails a punishment of imprisonment for a fixed term in natural years which shall not be . . . more than eight (8) years."  33 L.P.R.A. § 4694(d).  Accordingly, Attempted Aggravated Burglary has a maximum legally-authorized prison sentence of four years, and thus is "punishable by . . . imprisonment for a term exceeding one year."  *See* USSG § 2K1.1 cmt. n.1 (defining "felony conviction" for purposes of sentencing enhancement).

1   distribute, or dispense.'"   *United States* v. *Dávila-Félix*, 667 F.3d 47, 56 (1st Cir. 2011)

2   (*quoting* USSG § 4B1.2(b)).

3          The Puerto Rico statute is clearly divisible, setting forth multiple alternate *actus*

4   *rei* (*e.g.*, sells, introduces, and possesses) and *mentes reae* (*e.g.*, intent to sell a controlled

5   substance, and intent to introduce a weapon).   *See United States* v. *Carter*, 752 F.3d 8,

6   17-18 (1st Cir. 2014) (finding assault statute "divisible into six permutations of subsumed

7   offenses" based on its recitation of three applicable *mentes reae* and two applicable *actus*

8   *rei*).   As a result, we may consult Shepard documents to determine the specific crime of

9   Castro's conviction.   The sentencing order or Sentencia simply states that Castro was

10  convicted, by guilty plea, of Attempted Introducing Objects into a Penal Facility.

11  Sentencia, *People* v. *Castro-Vázquez*, Crim. No. DFJ2010G0038 (Bayamón Super. Ct.,

12  Apr. 19, 2011).   But, the charging document or Acusación establishes that Castro had

13  been charged with attempting to "introduce and/or possess with the intent to distribute,"

14  in a prison, the controlled substances of cocaine and marihuana.   Acusación, *People* v.

15  *Castro-Vázquez*, Crim. No. DFJ2010G0038 (Bayamón Super. Ct., Dec. 9, 2010).   Since

16  the available Shepard documents do not identify which of those two acts Castro was

17  convicted of, the question becomes whether the intent to distribute the drugs applies to

18  the act of introducing them or only to the act of possessing them.

19         The structure of 33 L.P.R.A. § 4911 suggests that the intent provision applies only

20  to the act of possession.   After all, as the Spanish version makes clear, the statute begins

21  by prohibiting the acts of selling, introducing, and helping to sell prison contraband, and

22  then, using commas to identify a new clause, prohibits possessing contraband with the

1   intent to introduce or sell it.  33 L.P.R.A. § 4911.  Although the Puerto Rico Supreme

2   Court has not yet interpreted the statute, the Puerto Rico Court of Appeals has, finding

3   that its plain language prohibits the mere introduction of contraband into a prison.  *See*

4   *People* v. *Medal-Monsegutt*, Crim. No. KLCE20090202, at *7-8 (T.C.A., Arecibo Jud.

5   Dist., May 8, 2009); *see also People* v. *Vázquez-Santos*, 2006 PR App. LEXIS 1774, at

6   *13-14 (T.C.A., Bayamón Jud. Dist., Aug. 8, 2006).

7          The only way the mere introduction of drugs into a prison could be viewed as a

8   controlled-substance offense under the guidelines is if the term "import" was construed to

9   cover that act.  When viewed in isolation, it may be possible to interpret the term that

10  broadly.  After all, "import" generally means "to bring from a foreign or external source:

11  introduce from without."  *Import*, Webster's Third New International Dictionary (1981).

12  And, courts have used the term to describe the introduction of contraband into a prison.

13  *See*, *e.g.*, *Wood* v. *Hancock Cty. Sheriff's Dep't*, 354 F.3d 57, 67 (1st Cir. 2003) (*quoting*

14  *Bell* v. *Wolfish*, 441 U.S. 520, 559 [1979]).  But, the definition of controlled-substance

15  offense in the guidelines immediately follows the term "import" with "export," thereby

16  suggesting a narrower use of the term, perhaps one more in keeping with the Controlled

17  Substances Import and Export Act.  *See* 21 U.S.C. § 952(a) (prohibiting the importation

18  of controlled substances "into the United States from any place outside thereof").  After

19  all, though some may speak of importing contraband into a prison, people do not often

20  speak of a prisoner "exporting" contraband when he escapes from prison with drugs on

21  him.  Thus, absent additional authority, we will not construe the introduction of drugs

22  into a prison – as opposed to into the United States in general or our customs territory –

1    as an importation under the guidelines' definition of a controlled-substance offense.  *See*

2    USSG § 4B1.2(b).

3          Because the record does not indicate whether Castro was convicted of introducing

4    drugs into prison or of possessing them with the intent to distribute, the court cannot find

5    that his 2011 conviction of Attempted Introducing Objects into a Penal Facility was of a

6    controlled-substance offense.

7          **D.** **Attempt or Conspiracy to Commit a Controlled Substances Offense:**

8          On April 19, 2011, Castro was convicted in Bayamón Superior Court, under

9    docket numbers DSC2010G0652 and -0653, of two counts of Attempt or Conspiracy to

10   Commit Controlled Substances Felony (24 L.P.R.A. §§ 2401, 2406) and sentenced to

11   concurrent terms of nine months in prison.  24 L.P.R.A. § 2401 provides, in relevant part,

12   that "it shall be unlawful for any person knowingly and intentionally [t]o manufacture,

13   distribute, dispense, transport or conceal, or possess with the intent to manufacture,

14   distribute, dispense, transport or conceal a controlled substance."   And, 24 L.P.R.A.

15   § 2406 proscribes "[a]ny person who attempts or conspires to commit" an offense under

16   24 L.P.R.A. § 2401.  The First Circuit has recognized that 24 L.P.R.A. § 2401 is divisible

17   and that a conviction under it of "possession with intent to distribute a controlled

18   substance" constitutes a controlled-substance offense under the guidelines.  *United States*

19   v. *Dávila-Félix*, 763 F.3d 105, 108 (1st Cir. 2014) (*citing* 24 L.P.R.A. § 2401).

20         Because the statute of conviction is divisible, the court may examine Shephard

21   documents from the convicting court to determine the distinct offenses of which Castro

22   was convicted.  Here, the accusatory instruments or Acusaciones establish that Castro

1    was charged under 24 L.P.R.A. § 2401 with knowingly possessing cocaine and

2    marihuana with intent to distribute.  *See* Acusación, *People* v. *Castro-Vázquez*, Crim.

3    No. DSC2010-G0652 (Bayamón Super. Ct. Dec. 9, 2010); Acusación, *People* v. *Castro-*

4    *Vázquez*, Crim. No. DSC2010G0653 (Bayamón Super. Ct. Dec. 9, 2010).  Meanwhile,

5    the sentencing orders or Sentencias both state that Castro's § 2401 charges have been

6    "reclassified" as § 2406 charges and that he pleaded guilty to the latter by having the

7    Acusaciones read to him and admitting his guilt under those allegations.  *See* Sentencia,

8    *People* v. *Castro-Vázquez*, Crim. No. DSC2010G0652 (Bayamón Super. Ct. Apr. 19,

9    2011); Sentencia, *People* v. *Castro-Vázquez*, Crim. No. DSC2010G0653 (Bayamón

10   Super. Ct. Apr. 19, 2011).  Accordingly, it is clear that the controlled-substance offenses

11   underlying Castro's attempt-or-conspiracy convictions are the possession-with-intent-to-

12   distribute charges in the Acusaciones that were then "reclassified" for purposes of his

13   guilty plea.  Although these Sentencias appear to be form documents, they clearly

14   establish that, whether as a matter of Puerto Rico practice or law, when Castro's

15   possession-with-intent-to-distribute charges were reclassified as conspiracy charges, the

16   specific crimes of conviction and the allegations under which he pleaded guilty were

17   incorporated from and defined by those in the Acusaciones.

18        Now that the court has identified Castro's precise offenses of conviction, we must

19   determine whether those offenses constitute controlled-substance offenses under the

20   guidelines.  We conclude that they do.  Castro was convicted of an attempt or conspiracy

21   to knowingly possess cocaine and marihuana with intent to distribute in violation of 24

22   L.P.R.A. § 2401.  Under federal law, cocaine and marihuana are controlled substances.

1   *See* 21 U.S.C. § 812 scheds. I(c)(10), II(a)(4).   And, a conviction under 24 L.P.R.A.

2   § 2401 for possession with intent to distribute is a controlled-substance offense under the

3   guidelines. *Dávila-Félix*, 763 F.3d at 108.   Moreover, under the guidelines, an attempt or

4   conspiracy to commit a controlled-substance offense is still a controlled-substance

5   offense.   USSG § 4B1.2, comment. n.1.   We have already shown that the Puerto Rico

6   definition of attempt fits within the generic definition of attempt as applicable under the

7   guidelines.   The same holds true for the Puerto Rico definition of conspiracy vis-à-vis the

8   generic definition of conspiracy.

9          Under its generic definition, "[c]onspiracy is characterized by 'an agreement

10   between two or more people for the purposes of promoting or committing a crime.'"

11   *United States* v. *Mendez-Casarez*, 624 F.3d 233, 239 (5th Cir. 2010) (*quoting United*

12   *States* v. *Cornelio-Pena*, 435 F.3d 1279, 1285 (10th Cir. 2006)).   "In many jurisdictions,

13   the definition of conspiracy also includes an overt act." *Id.* (quoting *Cornelio-Pena*, 435

14   F.3d at 1286); *see also United States* v. *Garcia-Santana*, 774 F.3d 528, 534-35 (9th Cir.

15   2014).   Meanwhile, under Puerto Rico law, a conspiracy occurs "[w]hen two (2) or more

16   persons conspire or agree to commit a crime and have made specific plans regarding their

17   participation, the time, the location, or the acts to be carried out."   33 L.P.R.A. § 4877.

18   Moreover, "[n]o agreement, except to commit a first degree or second degree felony,

19   shall constitute conspiracy, except that ulterior or optional act is carried out to execute the

20   agreement by one or more of the conspirators." 33 L.P.R.A. § 4878.   Accordingly, unless

21   the conspiracy is to commit a first or second degree felony, Puerto Rico law has an overt-

22   act requirement. *See Garcia-Santana*, 774 F.3d at 534-35 & n.4.   And, neither of the

1    possession-with-intent crimes underlying the conspiracy was a first or second degree

2    felony. *Compare* 33 L.P.R.A. § 4644(a), (b) (defining first and second degree felony),

3    *with* 24 L.P.R.A. § 2401 (defining the underlying possession crimes). Thus, the Puerto

4    Rico definition of conspiracy fits within the generic definition under the guidelines.

5            Accordingly, Castro's 2011 convictions of Attempt or Conspiracy to Commit

6    Controlled Substances Felony both qualify as convictions of a controlled-substance

7    offense under § 2K2.1(a)(2) of the guidelines.[9]

8                                              **IV.**

9                                **Guidelines Conclusion**

10           Three of Castro's prior felony convictions qualify as of a crime of violence or of a

11   controlled-substance offense under the federal sentencing guidelines. In particular, the

12   court finds that Castro's 2008 conviction of Attempted Aggravated Burglary was of a

13   crime of violence and his two 2011 convictions of Attempt or Conspiracy to Commit a

14   Controlled Substance Felony were of controlled-substance offenses. Accordingly, even

---

[9] Under Puerto Rico Law, cocaine is a narcotic drug listed in Schedule II(a)(4), and marihuana is a non-narcotic drug listed in Schedule I(c). 24 L.P.R.A. §§ 2202 ("Schedule of controlled substances"), 2102(16), (17) ("Definitions" of "Marihuana" and "Narcotic drug"). Any person convicted of possessing with intent to distribute a narcotic drug in Schedule II "shall be sentenced to imprisonment for a fixed term of twenty (20) years," which "may be reduced to a minimum of ten (10) years . . . if there should be extenuating circumstances." 24 L.P.R.A. § 2401(b)(1)(A). And, any person convicted of possessing with intent to distribute a non-narcotic drug in Schedule I "shall be sentenced to imprisonment for a fixed term of twelve (12) years," which "may be reduced to a minimum of five (5) years . . . if there should be extenuating circumstances." 24 L.P.R.A. § 2401(b)(1)(B). Under Puerto Rico law, "[a]ny person who attempts or conspires to commit any offense defined in [24 L.P.R.A. § 2401] . . . shall be punished by imprisonment . . . , which penalty shall not exceed the penalty prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 24 L.P.R.A. § 2406. Accordingly, Castro's convictions of Attempt or Conspiracy to Commit Controlled Substances Felony have a maximum legally-authorized prison sentence of ten years and five years, respectively, assuming extenuating circumstances, and thus are "punishable by . . . imprisonment for a term exceeding one year." *See* USSG § 2K2.1 cmt. n.1 (defining "felony conviction" for purposes of sentencing enhancement). Based on these applicable sentences, neither underlying offense was a first or second-degree felony. *See* 33 L.P.R.A. § 4644(a), (b).

1    under *Descamps*, Castro warrants the sentencing enhancement in Section 2K2.1(a)(2) of

2    the guidelines, raising his base-offense level to twenty-four, because he had "at least two

3    felony convictions of either a crime of violence or a controlled substance offense."

4    USSG § 2K2.1(a)(2).[10]

**V.**

**Resentencing Hearing**

7         On March 30, 2016, the court presided over a resentencing hearing in which we

8    heard argument from the parties and then formally pronounced that Castro still warranted

9    the sentencing enhancement under Section 2K2.1(a)(2) of the guidelines.  The court then

10   resentenced Castro to fifty-one months in prison, keeping in place his preexisting term of

11   supervised released and the monetary assessment.  We decided to impose a downwardly

12   variant sentence because we realized that some might contest our conclusions about the

13   continued applicability of the sentencing enhancement and, in case we were wrong, we

14   wanted to give Castro the benefit of a reduced sentence.  We stand fully behind our legal

15   conclusions, while being cognizant of the fact that the legal issues here are subject to

16   reasonable debate.  Also, as a sentencing court, the experience of seeing a defendant for

17   the second time can bring a new emphasis to the calculations we make under 18 U.S.C.

18   § 3553(a).  At the hearing, we received mitigating character evidence from Castro and

19   also had to look at him now as a defendant with one less violent-crime conviction in his

20   record.  The United States did not bring any new information to our attention.

---

[10] The court does not have to decide whether the same-sentence rule in § 4A1.2(a)(2) applies to the calculation of prior felony convictions under § 2K2.1(a) of the guidelines because, even if it did, Castro's ultimate sentencing range under the guidelines would remain the same.

1       The United States contends that we violated our mandate by resentencing Castro.

2  (ECF No. 96.)  On April 1, 2016, we convened another proceeding so that we could listen

3  to their arguments in full and hear from Castro as well.  We had no intention of violating

4  our mandate, and do not believe that we did.  We simply did what we believe is proper

5  for the case within the scope of our discretion.

6                                              **VI.**

7                                        **<u>Conclusion</u>**

8       Whenever a jurisdiction happens to define its violent felonies or drug offenses

9  more broadly than most other jurisdictions do, the sentencing guidelines will continually

10  err in their evaluation of them, often making it seem as though a defendant has a less

11  egregious criminal history than he actually does.  The First Circuit has described the

12  "odd" situation to which the guidelines often bring us, especially in a district like Puerto

13  Rico, where the need to respond to surges of excessive violence has caused the local

14  system to broaden, rather than constrict, its definition of certain core violent crimes:

15              Convictions under statutes with names connoting violence are
16              sometimes deemed not to be crimes of violence, even if it is likely
17              that most such convictions arise from violent conduct.  This apparent
18              anomaly arises largely because many states have stretched these
19              violence-connoting rubrics to encompass conduct that Congress does
20              not define as a crime of violence . . ., and prosecutors and courts are
21              left to choose between two unpalatable options: either we may deem
22              non-violent individuals who likely are in fact violent, or we may
23              falsely assume that every person convicted under an overbroad
24              statute is in fact a violent criminal.

25

26  *United States* v. *Fish*, 758 F.3d 1, 18 (1st Cir. 2014).  Unpalatable indeed, and yet we

27  continue to embrace the categorical approach.  In *Fish*, the First Circuit was dealing with

1  ACCA provisions that increase the maximum legally-authorized sentence of a defendant

2  based on judicial fact-finding about his prior convictions.   The Court was thus

3  constrained by the Sixth Amendment to deem violent felons nonviolent, as the

4  categorical approach often forces us to do.  *See id*.

5      In this case, however, the court is operating under the sentencing guidelines,

6  which were ruled advisory after *Taylor* had first started us on the road to *Descamps*.  As a

7  result, a Sixth Amendment constraint no longer exists for us here.  The Supreme Court

8  has nonetheless continued our march down the road of the categorical approach,

9  commanding us to ignore the facts – here, uncontested facts – when determining whether

10  a recidivist felon in possession of a fully-loaded firearm has been previously convicted of

11  crimes of violence or of drugs.  We have followed that command, and thankfully, in this

12  instance, it still led us to the right result so far as the enhancement was concerned.  But,

13  in the normal run of things, it will not always do so, which, in turn, will often require the

14  sentencing court to look to the very facts that *Descamps* ignores, to see whether the facts

15  of a case require a sentencing departure or variance.

16      **IT IS SO ORDERED.**

17      San Juan, Puerto Rico, this 4th day of April, 2016.

18                                                          S/José Antonio Fusté
19                                                          JOSE ANTONIO FUSTE
20                                                          U. S. DISTRICT JUDGE